CANADY, C.J.,
concurring in result.
I concur in the majority opinion except for the portion of the opinion relating to count 5, the charge that Judge Turner violated Canon 7C(1) by personally soliciting campaign contributions. I would address the merits of Judge Turner’s argument that Canon 7C(l)’s prohibition of all personal solicitation of campaign contributions by judicial candidates violates the First Amendment of the United States Constitution, hold that prohibition unconstitutional, reject the Panel’s finding of guilt regarding count 5, but nonetheless remove Judge Turner from office based on his other misconduct.
Proper judicial restraint does dictate that when legislative or executive action is challenged on constitutional grounds, the courts should avoid the constitutional issue if the case can be decided on other grounds. This principle of judicial restraint has no proper application where the constitutional challenge is to a judicially adopted rule which trenches on constitutional rights. This Court was responsible for the adoption of Canon 7C(1) and is responsible for its continuing existence. To the extent that Canon 7C(1) infringes on speech rights protected by the First Amendment, this Court bears responsibility for the ongoing constitutional violation. When presented with a case which properly presents a constitutional challenge to a rule we have adopted, we should not decline to address it but should use the opportunity to ensure that we have exercised our rule-making power in a way that is consistent with constitutional requirements. If Canon 7C(1) violates the First Amendment, Florida state judges who *911 wish to vindicate their First Amendment rights should not be required to seek relief in federal court or in state circuit court while the Florida Supreme Court remains silent.
On the merits of the constitutional issue, I would conclude that Canon 7C(1) is not narrowly tailored to serve the State’s compelling interest in judicial impartiality.
Canon 7C(1) provides:
A candidate, including an incumbent judge, for a judicial office that is filled by public election between competing candidates shall not personally solicit campaign funds, or solicit attorneys for publicly stated support, but may establish committees of responsible persons to secure and manage the expenditure of funds for the candidate’s campaign and to obtain public statements of support for his or her candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from any person or corporation authorized by law. A candidate shall not use or permit the use of campaign contributions for the private benefit of the candidate or members of the candidate’s family.
Because Canon 7C(1) prohibits speech by candidates based on the content of that speech, it is subject to strict scrutiny review. See Weaver v. Bonner, 309 F.3d 1312, 1319 (11th Cir.2002) (noting that because “[a] candidate’s speech during an election campaign ‘occupies the core of protection afforded by the first amendment,”’ strict scrutiny was proper standard to review Georgia’s ban on personal solicitation by judicial candidates) (quoting McIntyre v. Ohio Elections Comm’n, 514 U.S. 334, 346, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995)); see also Carey v. Wolnitzek, 614 F.3d 189, 200 (6th Cir.2010) (applying strict scrutiny review to challenge against Kentucky’s ban on personal solicitation by judges). We have previously recognized that Florida has “a compelling state interest in preserving the integrity of our judiciary and maintaining the public’s confidence in an impartial judiciary.” In re Kinsey, 842 So.2d 77, 87 (Fla.2003). Canon 7C(1) fails, however, to meet the requirements of the First Amendment because it was not narrowly tailored to serve this interest.
Substantially identical canons have been invalidated by both the Eleventh Circuit, Weaver, 309 F.3d at 1322, and the Sixth Circuit. Carey, 614 F.3d at 205. I find the reasoning of those decisions to be compelling.[2]
The Eleventh Circuit held that Georgia’s canon was not narrowly tailored to serve Georgia’s compelling interest in preserving judicial impartiality. Weaver, 309 F.3d at 1322. The Eleventh Circuit reasoned that
even if there is a risk that judges will be tempted to rule a particular way because of contributions or endorsements, this risk is not significantly reduced by allowing the candidate’s agent to seek these contributions and endorsements on the candidate’s behalf rather than the candidate seeking them himself. Successful candidates will feel beholden to the people who helped them get elected regardless of who did the soliciting of support. [The Canon] thus fails strict scrutiny because it completely chills a candidate’s speech on these topics while hardly advancing the state’s interest in judicial impartiality at all.
Id. at 1322-23.
The Sixth Circuit also recently struck down a similar judicial canon from Ken *912 tucky because it was not narrowly tailored to that state’s interest in judicial integrity and impartiality. Carey, 614 F.3d at 205. Judge Sutton cogently explained why a prohibition on personal solicitation by judicial candidates like the one at issue here is not narrowly tailored:
Prohibiting candidates from asking for money suppresses speech in the most conspicuous of ways and, in the process, favors some candidates over others— incumbent judges (who benefit from their current status) over non-judicial candidates, the well-to-do (who may not need to raise any money at all) over lower-income candidates, and the well-connected (who have an army of potential fundraisers) over outsiders. For these reasons, it is tempting to say that any limitation on a candidate’s right to ask for a campaign contribution is one limitation too many. But there are at least two areas covered by the clause that test such an interpretation — face-to-face solicitations, particularly by sitting judges, and solicitations of individuals with eases pending in front of the court. Yet we need not decide the validity of such restrictions today because Kentucky goes well beyond them.
Besides covering in-person solicitations and those directed at individuals with pending cases, the canon prohibits a range of other solicitations, including speeches to large groups and signed mass mailings. Such indirect methods of solicitation present little or no risk of undue pressure or the appearance of a quid pro quo. No one could reasonably believe that a failure to respond to a signed mass mailing asking for donations would result in unfair treatment in future dealings with the judge. Nor would a speech requesting donations from a large gathering have a “coercive effect” on reasonable attendees.
At the same time, the clause does too little to protect the Commonwealth’s interests. Although the candidate himself may not solicit donations, his campaign committee may. And nothing prevents a committee member from soliciting donations in person. That leaves a rule preventing a candidate from sending a signed mass mailing to every voter in the district but permitting the candidate’s best friend to ask for a donation directly from an attorney who frequently practices before the court. Are not the risks of coercion and undue appearance far less with the first (prohibited) solicitation than the second (permitted) one?
Although the clause prevents judicial candidates from saying “please, give me a donation,” it does not prevent them from saying “thank you” for a donation given. The clause bars any solicitation, whether in a large group or small one, whether by letter or one on one, but it does not bar the candidate from learning how individuals responded to the committee’s solicitations. That omission suggests that the only interest at play is the impolitic inter-personal dynamics of a candidate’s request for money, not the more corrosive reality of who gives and how much. If the purported risk addressed by the clause is that the judge or candidate will treat donors and non-donors differently, it is knowing who contributed and who balked that makes the difference, not who asked for the contribution. If Kentucky fears that judges will allow campaign donations to affect their rulings, it must believe that “[successful candidates will feel beholden to the people who helped them get elected regardless of who did the soliciting of support.” Weaver, 309 F.3d at 1323.
Carey, 614 F.3d at 204-05 (alteration in original) (citations omitted).
*913 I similarly conclude that Florida’s interest in preserving the actual and apparent impartiality of Florida’s judiciary is not significantly protected by Canon 7C(1). Canon 7C(1) completely chills a candidate’s speech regarding contributions while providing only marginal protection against actual or perceived judicial bias.
I therefore conclude that Canon 7C(1) encroaches on the iree speech rights of judicial candidates in violation of the First Amendment of the United States Constitution. I agree with the majority, however, that the pattern of misconduct demonstrated by Judge Turner’s other violations requires his removal from office.
POLSTON, J., concurs.

. A conflicting view has recently been adopted by the Seventh Circuit. See Bauer v. Shepard, 620 F.3d 704 (7th Cir.2010); Siefert v. Alexander, 608 F.3d 974 (7th Cir.2010).